IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| DISABILITY RIGHTS IOWA, | ) | NO. 4:14-cv-00092 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| DAVID WHITE, in his official | ) | MEMORANDUM OF LAW IN SUPPORT |
| capacity as Sheriff of Muscatine County, | ) | OF PLAINTIFF'S MOTION FOR |
| and MUSCATINE COUNTY SHERIFF'S | ) | PRELIMINARY INJUNCTION |
| DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **INTRODUCTION**

Disability Rights Iowa ("DRI"), the Congressionally-mandated protection and advocacy

agency for individuals with disabilities in Iowa, is investigating whether an inmate at the

Muscatine County Jail (the "Jail") was abused when jail officers repeatedly shocked her with a

Taser in order to change her jumpsuit.   As part of its investigation, DRI exercised its authority

under federal law to access certain records and interview witnesses.   Defendants David White,

the Sheriff of Muscatine County, and the Muscatine County Sheriff's Department (the "Sheriff")

through counsel, County Attorney Alan Ostergren, refused to provide DRI with access to the

requested records and interviews in violation of the Protection and Advocacy for Individuals

with Mental Illness ("PAIMI") Act, 42 U.S.C. § 10801 *et. seq.,* the implementing regulations,

42 C.F.R. §51.1 *et seq.,* and 42 U.S.C. § 1983, and prior decisions by this Court.   DRI moves for

a preliminary injunction so that it may conduct a full investigation into the Taser Incident and

pursue appropriate remedies to ensure that the rights of Muscatine County Jail inmates are protected.

## STATEMENT OF FACTS

Congress created protection and advocacy agencies (P&A's) for individuals with disabilities and mental illness more than 25 years ago. (Developmental Disabilities Assistance and Bill of Rights ("DD") Act, 42 U.S.C. § 10543 *et seq.* and Protection and Advocacy for Individuals with Mental Illness ("PAIMI") Act, 42 U.S.C. § 10801 *et seq.*) There is a protection and advocacy agency in every state and territory in the United States. In 1984, the Governor of Iowa designated Iowa Protection and Advocacy Services, Inc., a non-profit corporation, as the protection and advocacy agency in Iowa. In 2010, Iowa Protection and Advocacy Services, Inc. changed its name to Disability Rights Iowa.

All protection and advocacy agencies, including DRI, are authorized under the PAIMI Act, 42 U.S.C. § 10801(b)(2), to:

- investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the [P&A] system or if there is probable cause to believe that the incidents occurred; and
- protect and advocate for the rights of individuals with mental illness through activities to ensure the enforcement of the Constitution and federal and state statutes.

In accordance with this authority, DRI initiated an abuse and neglect investigation on October 29, 2013 after it received a report that inmate Marie Franks was repeatedly shocked with a Taser, by Muscatine County Jailer Sergeant Crump, in order to change her jumpsuit (the "Taser

Incident"). The purpose of DRI's investigation was to determine if Ms. Franks had been abused, and if so, to prevent such abuse by Jail staff from recurring at the Jail in the future.

As part of its investigation, DRI requested the following records:

- Any and all Investigation reports by the Jail, including but not limited to members of the Jail staff, the County's internal affairs staff, the Muscatine County Sheriff (or his designees) and any agency charged with investigating abuse, neglect or injury occurring at the Jail (see DRI's correspondence dated November 1, 2013, attached at Exhibit A);

- The Administrative Review of Critical Incidents report pertaining to the Taser Incident of Marie Franks and a counseling record between Sergeant Crump and his supervisor (correspondence attached as Exhibit B);

- The Jail's records showing the training of Jail staff on Taser use; and

- The Jail's policies on the use of Tasers.

In addition, DRI also sought to interview jail employees and witnesses to the Taser Incident (See correspondence attached as Exhibits E–G).

The Sheriff, through his counsel, repeatedly refused to provide the requested records to DRI and refused to arrange interviews with the jail staff who were involved in the incident. (See correspondence attached as Exhibits E–G).

## **ARGUMENT**

I.     **DRI is entitled to a preliminary injunction to obtain records so that it can conduct a full abuse and neglect investigation into the Taser Incident.**

In *Iowa Protection and Advocacy Services, Inc. v. Rasmussen*, 521 F. Supp.2d 895, 900 (S.D. Iowa 2002), a case in which the plaintiff in this case (Disability Rights Iowa, formerly known as Iowa Protection and Advocacy Services) successfully moved for a preliminary

injunction to access external and internal investigation reports, the Court explained the standards for a preliminary injunction:

> The relevant factors in determining whether to grant a preliminary injunction are: "(1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of an injunction is in the public interest." (cites omitted) These four factors are typically referred to as the "Dataphase factors." (cite omitted) "The standard for granting a permanent injunction is essentially the same as for a preliminary injunction, except that to obtain a permanent injunction the movant must attain success on the merits," rather than simply establish a likelihood of success.

This Court, after reviewing other decisions involving the access authority of P&A's, stated that the decision must hinge on the first Dataphase factor: whether the case is meritorious or is likely to succeed on the merits. *Id.* at 901. Therefore, DRI's analysis will begin with the first, most important factor, and then discuss the remaining three Dataphase factors for granting a preliminary injunction.

**A. DRI is likely to succeed on the merits in accessing records and interviewing witnesses.**

**1. DRI has the right to access any internal investigation reports including the Administrative Review of Critical Incidents report and accompanying counseling record.**

DRI is authorized to access any internal investigation reports including the Administrative Review of Critical Incidents report pertaining to the Taser Incident and the related counseling record for three reasons:

1) Ms. Franks signed a release granting DRI access to review all of her records;

2) The Administrative Review of Critical Incidents report and the accompanying counseling record pertain to Ms. Franks and the Taser Incident; and

3) DRI is authorized under the PAIMI Act to access internal investigation reports, including personnel records.

The PAIMI Act authorizes P&A systems, such as DRI, to access "all records of an individual who is a client of the [P&A system] if such individual, or the legal guardian, conservator, or other legal representative of such individual has authorized the system to have such access." 42 U.S.C. § 10805(a)(4)(A). Here, Ms. Franks provided DRI with a release to access all of her records. (See Exhibit A)

Further, "all records of an individual" means records of or pertaining to the individual. The Tenth Circuit Court of Appeals in *Center for Legal Advocacy v. Hammons* stated that a "rational reading" [of the phrase "all records of an individual"] is that it refers to records pertaining to or relating to an individual." *Center for Legal Advocacy v. Hammons*, 323 F.3d 1262, 1270 (10th Cir. 2003).

Finally, the PAIMI Act expressly gives P&A's access to investigative reports prepared by the facility. The PAIMI Act includes investigation reports made by the facility as records:

> As used in this section, the term "records" includes reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury.

> 42 U.S.C. § 10806 (b)(3)(A).

The regulations implementing the PAIMI Act reiterate that P&A's have access to:

> (c) Information and individual records, whether written or in another medium, draft or final, including handwritten notes, electronic files, photographs or video or audio tape records, which shall be available to the P&A system under the Act shall **include, but not be limited to:**

(2) Reports prepared by an agency charged with investigating abuse neglect, or injury occurring at a facility rendering care or treatment, or by or for the facility itself, that describe any or all of the following:

(i) Abuse, neglect, or **injury** occurring at the facility;

(ii) The steps taken to investigate the incidents;

(iii) **Reports and records, including personnel records, prepared or maintained by the facility, in connection with such reports of incidents**; or

(iv) Supporting information that was relied upon in creating a report, including all information and records used or reviewed in preparing reports of abuse, neglect or injury such as records which describe persons who were interviewed, physical and documentary evidence that was reviewed, and the **related investigative** findings.

42 C.F.R. §51.41(c)(2)(emphasis added).

Furthermore, in the preamble of the PAIMI regulations the U.S. Department of Health and Human Services states that "[i]n order for the P&A system to carry out its mandate to protect the rights of individuals with mental illness and to investigate allegations of abuse or neglect in public and private facilities, they must be empowered to access information contained in **all records** relevant to such activities." 62 FR 53548, 53559–60 (emphasis added).

This Court has already dealt with the Iowa P&As access to external and internal investigation reports in *Iowa Protection and Advocacy Services, Inc. v. Rasmussen*, 521 F.Supp.2nd 895 (S.D. Iowa 2002). The case addressed the P&A's access to both a report prepared by the state Department of Inspections and Appeals, and the minutes of a mortality review committee meeting by the facility itself (Woodward State Resource Center). This Court granted the agency's motion for a permanent injunction, requiring the state to give the agency access to both the external DIA investigation report and the minutes by the internal mortality review committee pertaining to the death of a facility resident. This Court stated that:

> While this court understands the value of a protected exchange of views and ideas, it does not have the authority to countermand the express policy

preferences of Congress. It is Congress' clear intent for protection and advocacy systems to participate in the review of treatment of dependent adults and to ultimately protect their rights. It would certainly undermine Congressionally mandated independent review if dependent adult care workers can cloak discussions about potential abuse at will by simply declaring such discussion "off the record," even if the motives for doing so are genuinely constructive. To shield from independent review valuable records of this type of appraisal would directly contradict the express stated public policy of Congress.

*Rasmussen*, 521 F. Supp. 2d at 902.

Similarly, DRI is likely to succeed on the merits in accessing any internal investigative report including the Administrative Review of Critical Incidents report. Like the minutes of the mortality review committee in *Rasmussen*, the Jails' Administrative Review report falls within the definition of "records" under the PAIMI Act and the implementing regulations because it was prepared by staff in a facility rendering care and treatment. Jails are expressly included as "facilities" under the PAIMI Act. 42 U.S.C. § 10802 (3). The Administrative Review report pertains to Ms. Franks and the Taser Incident.

DRI is also entitled to receive the record regarding the counseling of Sergeant Crump, because it is a "personnel record, prepared or maintained by the facility" in connection with the Taser Incident. 42 C.F.R. § 51.41(c)(2)(iii). DRI must have access to these documents to thoroughly investigate what happened in the Taser Incident, identify any systemic issues and effectively advocate for necessary reforms. If the records at issue demonstrate that the County Sheriff has or has not taken proactive action to address any necessary reform, it is critical for DRI to know when making its findings and recommendations.

2. **DRI has the right to access the Jail's training records and policies regarding Taser use.**

The regulations implementing the PAIMI Act expressly give P&A's access to "professional, performance, building, or other safety standards, demographic and statistical

information related to the facility." 42 C.F.R. § 51.41 (c)(5). DRI is likely to succeed on the merits in obtaining the Jail's training records and policies regarding Taser use because they clearly fall within the definition of professional and performance records and safety standards.

### 3. DRI has the right to interview Jail employees and witnesses who might reasonably be believed to have information about the Taser Incident.

In order to fully investigate abuse and neglect, Congress also gave P&A's the authority to access facilities. 42 U.S.C. § 10805(a)(3). This authority not only includes the authority to access all areas of a facility used by residents, but also the "opportunity to interview any facility service recipient, **employee**, or other persons, including the person thought to be the victim of such abuse, who might be reasonably believed by the [protection and advocacy] system to have knowledge of the incident under investigation." 42 C.F.R. § 51.42(b) (emphasis added).

By the very nature of conducting an investigation, DRI interviews witnesses to gather information on the incident in addition to records requests. In order to conduct a full and fair investigation, DRI would expect to have the perspective of jail staff and those involved in the incident to explain their involvement. As one court has held, "central to the concept of authority to investigate is the ability to interview witnesses." *Mississippi Protection and Advocacy System, Inc. v. Cotton,* 1989 WL 224953, at *9 (S.D. Miss. Aug. 7, 1989) (*aff'd* 929 F.2d 1054 (5th Cir. 1991)). In the case of *Robbins v. Budke,* 739 F.Supp. 1479, 1489 (D.N.M. 1990), the court found that the P&A's right to conduct investigations shall include the right to interview staff and resident witnesses and observe the physical environment.

Therefore, DRI is likely to succeed on the merits in its attempt to interview all witnesses, including Jail employees, in order to conduct a full investigation.

The balance of hardships rests with DRI because the Sheriff and the Jail have not identified how allowing interviews of witnesses to the Taser Incident would constitute a hardship. As this court pointed out, "one would suppose that a facility's legitimate interests are served when abuse and neglect are uncovered and can be corrected." *Rasmussen* at 901, quoting *Iowa Protection and Advocacy v. Gerard Treatment Programs (Gerard)*, 152 F. Supp.2d 1150, 1175 (N.D. Iowa 2001).

Defendant has not indicated what hardship he would experience by releasing the records. (See attached Exhibits E - G).

## B. The Public Interest Will Be Advanced by the Grant of Preliminary Relief.

When Congress enacted the PAIMI Act in 1986, it explained that its reasons for doing so were that individuals with mental illness are vulnerable to abuse and serious injury, and that state systems for monitoring compliance with respect to the rights of individuals with mental illness vary widely and are frequently inadequate. 42 U.S.C. § 10801(a). Based on these findings, Congress established protection and advocacy systems to protect and advocate for the rights of individuals with disabilities and investigate abuse and neglect. 42 U.S.C. § 10801(b). In addition, both U.S. District Courts for the Northern and Southern Districts of Iowa have held that the "public interest, as weighed by Congress, weighs in favor of injunctive relief permitting [DRI] to obtain access . . ." *Rasmussen* at 901(quoting *Gerard* at 1175).

## C. DRI is irreparably harmed by being denied access to the records.

As both district courts in Iowa have stated, a protection and advocacy system, such as DRI, is irreparably harmed when it is prevented from fulfilling its statutory duty to investigate circumstances when there is probable cause to believe that abuse or neglect has occurred:

[W]hether or not other investigations have already been conducted of alleged

abuse and neglect ... and whether or not any investigation already undertaken by [Iowa P & A] or likely to be undertaken by [Iowa P & A] has or will reveal that no abuse or neglect has occurred ... [Iowa P & A] is still irreparably harmed by being prevented from pursuing fully its right to access records ... in pursuit of its duty to investigate circumstances providing probable cause to believe abuse or neglect may be occurring.

See *Rasmussen* at 901, citing *Gerard*, 152 F. Supp.2d at 1173.

In the present case, DRI is seeking records and interviews with witnesses to determine if Jail staff abused Ms. Franks and whether the Sheriff took appropriate remedial action to prevent such abuse in the future.

### D. The Balance of Hardships Favors DRI

As discussed above, DRI has been irreparably harmed by not being able to fully investigate the use of Tasers at the Jail. If DRI is not able to access the Jail's investigation report, training records and policies, it will be unable to fully investigate the Taser Incident and determine whether the Sheriff took remedial action to prevent any abuse from recurring.

To the extent that state law, if any, conflicts with Congress' establishment of public policy, the Supremacy Clause of the United States Constitution mandates that this Court must give deference to the federal government's policy intentions with respect to enabling DRI to investigate allegations of abuse and neglect. *Rasmussen*, at 902.

## CONCLUSION

For all of the above reasons, this Court should issue a preliminary injunction granting DRI access to the records and interviews requested, as required by the PAIMI Act and its implementing regulations.

Dated this 12th day of March, 2014.

Respectfully submitted,

_Cynthia Miller_
Cynthia A. Miller

_Jane Hudson_
Jane Hudson

DISABILITY RIGHTS IOWA
400 East Court Avenue, Suite 300
Des Moines, Iowa  50309
Telephone: (515) 278-2502
Fax: (515) 278-0539
Email:  cmiller@driowa.org
Email: jhudson@driowa.org
ATTORNEYS FOR PLAINTIFF

**ORIGINAL FILED – CM/ECF**

**COPIES MAILED TO:**

Alan R. Ostergren
Muscatine County Attorney
420 E. Third Street
Muscatine, IA  52761
ATTORNEY FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on March 12, 2014 by U. S. Mail.

_Jean Henry_

# Disability Rights IOWA
## Law Center for Protection and Advocacy™

November 1, 2013

Alan R. Ostergren                          **Sent Via Facsimile**
Muscatine County Attorney                  **(563) 263-4944**
420 E. Third Street
Muscatine, Iowa 52761

Re:     **Probable Cause Investigation**
        **Request for Records Regarding Marie Lorraine Franks**

Dear Mr. Ostergren:

On October 29, 2013 Disability Rights Iowa (DRI) made a records request to the Muscatine County Sheriff's Office. DRI is federally mandated to investigate allegations of abuse and neglect. Please refer to the October 29, 2013 letter citing DRI's federal access authority.

Your office was contacted on October 29, 2013 prior to DRI requesting records in order to perform an investigation on alleged incidents of abuse and neglect. After receiving the letter from your office denying DRI's federal access authority but encouraging use of open records law, your office was again contacted by DRI. Your office did not return DRI's attempts at contact to discuss access authority.

A release of information from Ms. Franks is not required for the release of the Jail Division's written policies, training manuals, training schedules, safety standards, mechanical or physical restraint policies, etc., etc. According to federal regulations documentation of this nature shall promptly be supplied after the request made on October 29, 2013.

DRI was able to contact Ms. Franks. Please find attached a signed release from Ms. Franks allowing the Jail to disclose confidential information regarding Ms. Franks.

Please find below the records request made on October 29, 2013:

**Pursuant to federal regulations, our agency is requesting access to the following records of Marie Lorraine Franks from September 1, 2013 through October 29, 2013:**

- Any and all information and individual records obtained by the Jail in the course of providing intake, assessment, evaluation, supportive and other services, to Ms. Franks, including medical records, financial records, and reports prepared or received by the Jail:
- Any and all discharge and transfer records, including records indicating where Ms. Franks was transferred after:
  - She was restrained and tased on or about October 7, 2013;
  - She left the jail.

**PLAINTIFF'S EXHIBIT**
A p.1

---

*Our Mission: To defend and promote the human and legal rights of Iowans with disabilities.*

400 East Court Avenue, Suite 300    Telephone: 515-278-2502    Toll Free: 1-800-779-2502    Website: www.driowa.org
Des Moines, Iowa 50309              FAX: 515-278-0539           Toll Free TTY: 1-866-483-3342    E-mail: info@driowa.org

- Any and all Law Enforcement Report(s) for calls or incidents involving Ms. Franks from September 1, 2013 to date;
- Any documentation, including source documentation (summaries and hand-written notes) and communications (written and electronic) resulting from instances when Ms. Franks committed assaults on Jail staff or peace officers;
- Video surveillance of any and all instances when Ms. Franks was restrained and or tased while in the Jail;
- Any and all Investigation reports (whether in draft or final) by the Jail, including, but not limited to members of the Jail Staff, the County's internal affairs staff, the Muscatine County Sheriff (or his designees) and any agency charged with investigating abuse, neglect or injury occurring at the Jail, that describe any or all of the following:
  - abuse, neglect, injury, restraint or tasing of Ms. Franks while she was at the Jail;
  - reports records, including personnel records, prepared or maintained by the jail staff, administrative staff, internal affairs staff, the Muscatine County Sheriff (or his designees) and any agency charged with investigating abuse, neglect or injury, restraint or tasing of Ms. Franks occurring at the Jail; and
  - Supporting information that was relied upon in creating a report, including all information and records used or reviewed in preparing reports of abuse, neglect or injury such as records which describe persons who were interviewed, physical and documentary evidence that as reviewed, and the related investigative findings.
- Any and all documents and correspondence, including video and audio recordings and photographs in your possession relating to Ms. Franks, including electronic versions.
- Reports prepared by individuals or entities performing certification or licensure reviews, or by professional accreditation organizations, as well as related assessments prepared for the facility by its staff, contractors or related entities;
- The Jail's written policies on the use of:
  - tasers;
  - force;
  - mechanical restraint, including but not limited to handcuffs;
  - physical restraint (holding); and
  - medical care and treatment during or after any of the above uses.
- Records indicating the training that Jail staff receive on the use and implementation of:
  - tasers;
  - force;
  - mechanical restraint, including but not limited to handcuffs;
  - physical restraint (holding); and
  - medical care and treatment during or after any of the above uses.
- Any and all professional, performance, and safety standards, demographic and statistical information relating to the use of the following by the Jail:
  - tasers;
  - force;
  - mechanical restraint, including but not limited to handcuffs;

- o physical restraint (holding); and
- o medical care and treatment during or after any of the above uses
- Records indicating the Jail's policy with respect to inmates' clothing and any requirements to change clothing.

**Please supply these records and documentation by Wednesday, November 6, 2013 COB. If you anticipate issues with meeting this deadline, please contact me right away to determine a viable plan.**

We appreciate your cooperation in permitting access in accordance with federal authority and assistance in DRI's congressionally mandated responsibilities. If you have any questions, please feel free to give me a call at ext. 36 or email at jgrauerholz@driowa.org.

Sincerely,
DISABILITY RIGHTS IOWA

*Jayna Grauerholz*

Jayna Grauerholz
Staff Attorney

Enc: ROI Marie Franks

Cc: Muscatine County Sheriff's Office
    Facsimile: (563) 262-4195

# AUTHORIZATION FOR RELEASE OF CONFIDENTIAL INFORMATION

Re: Marie Lorraine Franks                    Date of Birth: 10/31/1955

I, the undersigned, hereby authorize The Muscatine County Attorney's Office and/or Sheriff's Office to disclose and/or deliver to Disability Rights Iowa copies of documents and records considered confidential and maintained by you regarding the individual named above. This release also permits the verbal disclosure of any such confidential information between The Muscatine County Attorney's Office and/or Sheriff's Office and Disability Rights Iowa. Any request for information may include records for mental health and/or medical treatment, including but not limited to those records generated by said facility as well as the re-disclosure of records received by said facility from other agencies/facilities.

I understand that Disability Rights Iowa will use any information released by you for the purpose of advocating on my behalf pursuant to 42 U.S.C. §15001 et seq.; 42 U.S.C. §10801 et seq.; 29 U.S.C. §794 et seq.; and in some cases 42 U.S.C. § 1320b-21, Iowa Code Chapters 135B, 135C, and 135H. I further understand that if this information is disclosed to an individual or entity not covered by the HIPAA regulations it may be subject to re-disclosure.

I understand that I may revoke this consent at any time by sending written notice to Disability Rights Iowa or The Muscatine County Attorney's Office and/or Sheriff's Office. The revocation will take effect on the date it is received. In any event, this authorization will automatically expire one (1) year from the date of my signature; or upon closure of my case with Disability Rights Iowa, whichever comes first.

**AUTHORIZATION FOR RELEASE OF MENTAL HEALTH INFORMATION AND/OR DRUG/ALCOHOL ABUSE INFORMATION.** I acknowledge that records to be released MAY INCLUDE material that is protected by federal law and that is applicable to EITHER Mental Health Information or Drug/Alcohol Information or BOTH. My signature authorizes the release of all such information.

_Marie Franks_ _____    10-31-13
Signature (please sign in ink)        Date

1102 Cedar St.
Street Address

Muscatine
City, State, Zip Code

A p.4

# Disability Rights IOWA
## Law Center for Protection and Advocacy™

December 19, 2013

Alan R. Ostergren                                    **Sent Via Facsimile**
Muscatine County Attorney                            **(563) 263-4944**
420 E. Third Street
Muscatine, Iowa 52761

**Re:**   **Probable Cause Investigation**
          **Request for Records Regarding Marie Lorraine Franks**

Dear Mr. Ostergren:

On October 29, 2013 Disability Rights Iowa (DRI) made a records request to the Muscatine County Sheriff's Office. DRI is federally mandated to investigate allegations of abuse and neglect. Please refer to the October 29, 2013 letter citing DRI's federal access authority.

This letter is responding to your requests for clarification regarding the original request for records. We have also included additional requests for documentations outlined below. We tried to contact you on December 13th, 2013 in an attempt to discuss the previous clarification but have not heard back. We would still be happy to discuss any clarifications regarding our statutory authority with you.

Please find below the updated records request, clarifying, and in addition to the records request made on October 29, 2013:

- Muscatine County Jail Inspection Reports prepared by the State of Iowa Department of Corrections for the last three years.

- The Jail's written policies on the use of medical care and treatment during or after the use of mechanical or physical restraint.

- The Jail's written policy concerning discipline of staff members.

- Records or written policies indicating the training, for the past three years, that Jail staff receive on the use and implementation of:
  - tasers;
  - force;
  - mechanical restraint, including but not limited to handcuffs;
  - physical restraint (holding); and
  - medical care and treatment during or after any of the above uses.

**PLAINTIFF'S EXHIBIT**

*tabbies* _B_ _p.1_

*Our Mission: To defend and promote the human and legal rights of Iowans with disabilities.*

400 East Court Avenue, Suite 300        Telephone: 515-278-2502        Toll Free: 1-800-779-2502        Website: www.driowa.org
Des Moines, Iowa 50309                  FAX: 515-278-0539             Toll Free TTY: 1-866-483-3342    E-mail: info@driowa.org

- Records indicating the training that Sergeant John Crump, FTO Johnson, C.O. Sara Burroughs, FSM Bishop, C.O. Wheeler, Cpl. Dryer, Nurse Ashely Smith, and Tanya Bishop received on the use and implementation of:
  - tasers;
  - force;
  - mechanical restraint, including but not limited to handcuffs;
  - physical restraint (holding); and
  - medical care and treatment during or after any of the above uses.

- Records indicating investigation or evaluation of use of force, including but not limited to the use of tasers, against Ms. Franks produced by the Jail (or its staff members), or Sheriff (or his designees), including but not limited to the Administrative Review of Critical Incidents reports produced under Chapter III, section F, of the Sheriff's Department "Use of Force" Policy.

- Records or reports concerning the firing data of the taser used on Ms. Franks, in possession of the Jail or Sheriff's office.

**Please supply these records and documentation by Friday, December 27, 2013 COB. If you anticipate issues with meeting this deadline, please contact me to determine a viable plan.**

We appreciate your cooperation in permitting access in accordance with federal authority and assistance in DRI's congressionally mandated responsibilities. If you have any questions, please feel free to give me a call at ext. 32 or email at cmiller@driowa.org.

Sincerely,

DISABILITY RIGHTS IOWA

Cynthia A. Miller
Senior Staff Attorney

b p. 2

# Disability Rights IOWA
## Law Center for Protection and Advocacy™

January 8, 2014

Alan R. Ostergren
Muscatine County Attorney                          Sent Via Facsimile
420 E. Third Street                                (563)263-4944
Muscatine, Iowa 52761

Re:    Request for Inspection and Interviews
       Access Authority for Records Request

Dear Mr. Ostergren:

Thank you for providing an update last week that you are partially responding to our
previous records request.  We are writing you today to set up interviews and a facility
inspection of Muscatine County Jail as well as to clarify our access authority regarding
our previous records requests at issue.

1. Facility Inspection and Staff Interviews

As you know, Disability Rights Iowa (DRI) is investigating the tasing incident at
Muscatine County Jail involving Marie Franks on October 7th 2013. We wish to arrange
for an inspection of the Muscatine County jail and interviews with staff on Wednesday,
January 22, 2014.  We intend to interview the following staff:  Captain Dean Naylor,
Sergeant John W. Crump, FTO Lisa Johnson, C.O. Wheeler, C.O. Sara Burroughs, Cpl.
Dreyer, F.S.M. Tanya Bishop, Nurse Ashley Smith pursuant to our access authority
under 42 U.S.C.A. § 10805(a)(3) and 42 C.F.R. §51.42.

In a previous email, you had indicated we could contact Captain Naylor to arrange for
the facility inspection.  If you wish for us to arrange staff interviews in addition to the
facility inspection with Captain Naylor, please let me know otherwise I will coordinate
interviews through you directly.  Again, we would like to schedule these interviews for
January 22, 2014.

2. Access to Records

In response to your e-mails dated November 18 and December 19, 2013, denying our
access to the internal investigation documents including but not limited to the
Administrative Review of Critical Incidents report (i.e. counseling session between Sgt.
Crump and his supervisor) pertaining to the tasing incident of Marie Franks and a
counseling record between Sgt. Crump and his supervisor, we would like to provide you
with the following legal authority which supports our right to access these records.

**PLAINTIFF'S EXHIBIT**

C   p.1

*Our Mission: To defend and promote the human and legal rights of Iowans with disabilities.*

400 East Court Avenue, Suite 300    Telephone: 515-278-2502    Toll Free: 1-800-779-2502    Website:
Des Moines, Iowa 50309              FAX: 515-278-0539          Toll Free TTY: 1-866-483-3342   E-mail:

A. Preemption of State Law

DRI is not seeking access under Iowa Public Records law in Chapter 22 but rather pursuant to our access authority under federal law in the PAIMI statute. See 42 U.S.C. § 10806. Our access authority is both separate, and broader, than access to open records provided by Iowa Code in Chapter 22. DRI has access to records that are not available to the public under open records law because the federal statute, and its adopted regulations, expressly preempts state law. 42 U.S.C. §10806(b)(2)(C).

Every court that has addressed PAIMI in relation to contrary state law has found, in accordance with the Supremacy Clause of the United States Constitution, that PAIMI preempts state laws. *Center for Legal Advocacy v. Hammons*, 323 F.3d 1262 (10th Cir. 2003); *Protection and Advocacy for Persons with Disabilities v. Mental Health & Addiction Services*, 448 F.3d 119, 127-128 (2d Cir. 2006); *Iowa Protection and Advocacy Services, Inc. v. Rasmussen* 521 F.Supp.2d 895 (S.D. Iowa 2002); *Wisconsin Coalition for Advocacy, Inc. v. Czaplewski*, 131 F.Supp.2d 1039, 1048-49 (E.D. Wis. 2001); *Missouri Protection & Advocacy Services v. Missouri Dept. of Mental Health*, 447 F.3d 1021 (8th Cir. 2006). We would like, once again, to draw your attention to *Iowa Protection and Advocacy Services, Inc. v. Rasmussen* 521 F.Supp.2d 895 (S.D. Iowa 2002):

> By virtue of the Supremacy Clause of the United States Constitution, federal law—which "encompasses both federal statutes themselves and federal regulations that are properly adopted in accordance with statutory authorization," *City of New York v. Federal Communications Comm'n,* 486 U.S. 57, 63, 108 S.Ct. 1637, 100 L.Ed.2d 48 (1988)—can preempt state law. In some cases, federal law may expressly preempt state or local law, *see Kinley Corp. v. Iowa Utilities Bd.,* 999 F.2d 354 (8th Cir.1993), ...[S]tate law is naturally preempted to the extent of any conflict with a federal statute, ... [or] where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *906 Crosby v. National Foreign Trade Council,* 530 U.S. 363, 372–73, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) (citations and brackets omitted).

> And

> In the case of both the PAIMI Act and the PADD Act, it is clear that Congress has, indeed, "occupied the field," with respect to the investigatory powers and rules of disclosure regarding protection and advocacy systems for dependent adults. . .That independent check would become meaningless if a state was allowed to simply legislate away a protection and advocacy system's power to investigate by enacting restrictions.

*Rasmussen* at 905-906.

Therefore, to any extent our records request conflicts with Iowa law, our federal authority preempts Iowa law. DRI is entitled to records under our access authority regardless if they would otherwise be confidential under Chapter 22.

B. <u>PAIMI Act and Regulations</u>

You have previously denied our request for the internal investigation records including the personnel counseling session stating that it is not a record relating to Marie Franks and you question the validity of the PAIMI regulations as a valid interpretation of the statute. The following addresses your concerns and DRI maintains we do have valid access to these documents under our access authority.

The PAIMI Act was enacted in 1986 in response to a history of abuse and neglect of persons with mental illness. To effectuate change in this area of concern, Congress mandated that protection and advocacy systems investigate instances of abuse and neglect of individuals with mental illness, and pursue legal remedies to ensure enforcement of their rights. One very broad tool Congress equipped protection and advocacy systems for investigations is access to the records of individuals with disabilities. Section 10805(a) provides that a P&A system such as DRI shall:

> (4) in accordance with section 10806 of this title, have access to **all records** of
>
> (A) any individual who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access;
> (B) any individual (including an individual who has died or whose whereabouts are unknown)-(i) who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access; (ii) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and (iii) with respect to whom a complaint has been received by the system or . . . there is probable cause to believe that such individual has been subject to abuse or neglect; and
> (C) any individual with a mental illness, who has a legal guardian, conservator, or other legal representative, with respect to whom a complaint has been received by the system or with respect to whom there is probable cause to believe the health or safety of the individual is in serious and immediate jeopardy. . . .

42 U.S.C. § 10805(a) (emphasis added). Section 10806 then provides:

> As used in this section, the term "records" includes reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury

occurring at such facility and the steps taken to investigate such incidents, and discharge planning records.

*Id.* § 10806(b)(3)(A). The other subsections of § 10806 govern when the P & A system must maintain the records in confidence and when disclosure to the subject of the records, *i.e.,* the patient at the hospital or facility, is prohibited. *See id.* § 10806(a)-(b)(2).

Congress also illuminated the breadth of the access to records in the statutory provision allowing access to all records necessary to conduct an investigation into abuse or neglect (although the following language is contained in the DD Act, the 2000 Amendments to the PAIMI act were intended to extend the same authority as pursuant to the DD Act to P&As, See S. Rep. No 196, 106th Cong 1st Sess. 1, 25-26 (1999)):

> [Protection and advocacy] systems "must have access to the records of individuals described in subparagraphs (B) and (I), *and other records that are relevant to conducting an investigation...*"

42 U.S.C 15043(a)(2)(J)(i)(emphasis added)

Further, the preamble of the PAIMI regulations (62 FR 53548, 53559-60) addressed concerns that the proposed regulations' access provisions were too broad, disagreed and noted that the "[i]n order for the P&A system to carry out its mandate to protect the rights of individuals with mental illness and to investigate allegations of abuse or neglect in public and private facilities, they must be empowered to access information contained in all records relevant to such activities."

As you can see from the above citations, a protection and advocacy system has been specifically given this broad authority in order to carry out our investigative mandate. DRI must have access to effectuate our current investigation so we can evaluate any systemic issues and effectively advocate for necessary reforms. If the records at issue demonstrate that the County Sheriff has or has not taken proactive action to address any necessary reform, which would be critical for DRI to know when making our findings and recommendations.

DRI is unaware of any caselaw that purports to hold that the PAIMI regulations are invalid interpretation of the statute. If you are aware of any law that holds the regulations are not a valid interpretation, please feel free to forward to my attention.

1. <u>Requested report is a record of the individual</u>

The Administrative Review of Critical Incidents report (including any counseling session between Sgt. Crump and his supervisor) is not only a record of Marie Franks, but it is also an internal investigation subject to our access authority.

There have been several cases litigated by protection and advocacy systems that address the issue of what "all records" means in the PAIMI statute.  These peer review cases are analogous to our current debate as you have articulated that the record sought is not a record relating to Marie Franks and are otherwise confidential under Iowa law Chapter 22.  The leading peer review case that addresses your exact arguments is *Pennsylvania Protection and Advocacy Inc. v. Houstoun*, 228 F.3d 423 (3rd Circuit 2000).  The case involved the P&A's attempt to access peer review records in order to investigate the suicide of a resident at a psychiatric hospital and the state denied access.  The court rejected the hospital's assertions that (1) only incident reports are covered by the term "records," and (2) in any case, the records cannot be disclosable because they are the hospital's property, and not the "records of any individual" (phrase referenced in the Act's access provisions).  The Court found the plain language of the definition of "records" (at 42 U.S.C. § 10806 (b)(3)(A)) "encompasses the peer review reports at issue here, since they are clearly 'reports prepared by . . . staff of a facility rendering care and treatment.'  [The hospital] is a 'facility rendering care and treatment,' and the reports were prepared by committees composed of members of the hospital's staff."  Id. at 426.

In cases involving peer review records, the Second, Eighth, and Tenth Circuits have joined the Third Circuit in upholding the authority of P&As to gain access to records protected from disclosure under state peer review confidentiality statutes.  *Center for Legal Advocacy v. Hammons*, 323 F.3d 1262 (10th Cir. 2003); *Protection and Advocacy for Persons with Disabilities v. Mental Health & Addiction Services*, 448 F.3d 119, 127-128 (2d Cir. 2006); *Missouri Protection & Advocacy Services v. Missouri Dept. of Mental Health*, 447 F.3d 1021 (8th Cir. 2006).

Furthermore, the *Pennsylvania P&A* case and others have held that the records accessible to P&A's under the statute need not belong to the individual.  In fact, the language in the Act grants access to "all records of . . . any individual." 42 U.S.C. § 10805(a)(4).

> The term "records" is defined broadly to include reports prepared by any staff of the facility, reports prepared by investigative agencies, and discharge planning records. *Protection and Advocacy v. Mental Health & Addiction Services*, 448 F.3d 119, 125 (2006)

> "of" in this context need not be read so narrowly.  Thus, a rational reading is that it refers to *records pertaining to or relating to an individual. Center for Legal Advocacy v. Hammons*, 323 F.3d 1262,1270(2003)(emphasis added)

Thus, your previous assertion on November 18th, 2013, that "the record at issue is of a counseling session between Sgt. Crump and his supervisor...not relating to Marie Franks" is inaccurate.  A record pertaining to a counseling session between Sgt. Crump and his supervisor is a record relating to Marie Franks because it resulted from an investigation of the taser incident involving that staff member and Ms. Franks, and as

such, is a record "pertaining or relating" to Ms. Franks.  As such, DRI has access to this record.

2.  Internal Investigations

In addition to being a record of Marie Franks, any internal investigation record would also constitute an internal investigation report which DRI has access to under the statute and regulations.

As previously discussed the statute at 42 USC 10806(b)(3)(A) states a "record" includes reports prepared by staff of a facility rendering care and treatment or reports prepared with an agency charged with investigating…records.   As the PAIMI regulations at 42 CFR 51.2 defines "facility" to include jails and prisons, these regulations attach to your client.

The PAIMI regulations provide clear authority to Disability Rights Iowa to have access to records of an investigation:

(c) Information and individual records, whether written or in another medium, draft or final, including handwritten notes, electronic files, photographs or video or audio tape records, which shall be available to the P&A system under the Act shall **include, but not be limited to**:

(2) Reports prepared by an agency charged with investigating abuse neglect, or injury occurring at a facility rendering care or treatment, or by or for the facility itself, that describe any or all of the following:

(i) Abuse, neglect, or **injury** occurring at the facility;

(ii) The steps taken to investigate the incidents;

(iii) **Reports and records, including personnel records, prepared or maintained by the facility, in connection with** such reports of incidents; or

(iv) Supporting information that was relied upon in creating a report, including all information and records used or reviewed in preparing reports of abuse, neglect or injury such as records which describe persons who were interviewed, physical and documentary evidence that was reviewed, and the **related investigative** findings.

42 C.F.R. §51.41(c)(2)(emphasis added)

Similarly:

A P&A system shall have reasonable access and authority to interview and examine **all relevant records** of any facility service recipient (consistent with the provisions of section 105(a)(4) of the Act) **or employee**.

42 C.F.R. §51.41(d)(emphasis added).

The leading case affirming P&A access to state and internal investigation reports is *Iowa Protection and Advocacy Services, Inc. v. Rasmussen*, 521 F.Supp.2nd 895 (S.D. Iowa 2002). Although the majority of this case does address whether the Department of Inspections and Appeals had to share their investigation, the case also addresses the Woodward Internal Investigation report beginning on page 906. In granting the permanent injunction, the court gave great weight to our agency's argument that denial of access to these reports would cause irreparable harm and the court rejected the argument of defendants that confidentiality would be compromised by the release of the information.

Again, DRI has not found any caselaw purporting to state that the PAIMI regulations are not a valid interpretation of the statute. We assert that any internal investigation documents related to this taser incident with Marie Franks is an investigation report subject to our access authority.

C. <u>Confidentiality</u>

Any concerns about maintaining the confidentiality of records provided to DRI pursuant to federal regulations are also addressed by the PAIMI Act:

(a) An eligible system which, pursuant to section 10805(a)(4) of this title, has access to records which, under Federal or State law, are required to be maintained in a confidential manner by a provider of mental health services, shall, except as provided in subsection (b) of this section, maintain the confidentiality of such records to the same extent as is required of the provider of such services. 42 C.F.R. §10806(a)

DRI maintains confidentiality of records obtained under our access authority in accordance with the above cited authority in all of our investigations. We would assure you that this will be the case in this particular investigation.

We hope this clarifies the legal authority for our access to any previously denied documents including personnel records or internal investigation reports related to this incident with Marie Franks. Please forward these documents to my attention. If we do not receive the documents and your office continues to deny our access, please be on notice that we intend to file for declaratory and injunctive relief and obtain a ruling for access to these records.

Mr. Alan Ostergren
January 8, 2014

If you have any questions, please feel free to contact me at cmiller@driowa.org or (515)278-2502 ext. 32.

Sincerely,

DISABILITY RIGHTS IOWA

Cynthia A. Miller
Senior Staff Attorney

C p. 8

# Disability Rights IOWA
## Law Center for Protection and Advocacy™

January 21, 2014

Alan R. Ostergren
Muscatine County Attorney                    Sent Via Facsimile
420 E. Third Street                          (563)263-4944
Muscatine, Iowa 52761

Re:    Request for Inspection and Interviews

Dear Mr. Ostergren:

We are in receipt of your letter dated January 21, 2014 in response to our request for
staff interviews to be held on January 22, 2014. We will plan to be at the Muscatine
County Jail tomorrow around 11:00 a.m. to conduct the jail inspection and speak to staff
and witnesses. We would be happy to meet with you individually first to address your
concerns outlined in your letter.

However, I will address some of your concerns more specifically here. By the very
nature of conducting an investigation, DRI interviews witnesses to gather information on
the incident in addition to records requests. As one court has held, the "central concept
of the authority to investigate is the ability to interview witnesses." *Mississippi
Protection and Advocacy System, Inc. v. Cotton,* 1989 WL 224953 (S.D. Miss. Aug. 7,
1989) (*aff'd* 929 F.2d 1054 (5th Cir. 1991)). In order to conduct a full and fair
investigation, we would expect to have the perspective of jail staff and those involved in
the incident to explain their involvement.

The PAIMI regulations clarify the authority to interview witnesses. The regulation states
that the authority to conduct a "full investigation of an incident of abuse or neglect"
includes "the opportunity to interview any facility service recipient, employee, or other
persons, including the person thought to be the victim of such abuse, who might be
reasonably believed by the system to have knowledge of the incident under
investigation." 42 C.F.R. § 51.42(b) (emphasis added). In the case of *Robbins v.
Budke,* 739 F.Supp. 1479, 1489 (D.N.M. 1990), the court found that the P&A's right to
conduct investigations shall include the right to interview staff and resident witnesses
and observe the physical environment. DRI does not have any issue with you being
present with staff in an interview and we do not have any issue with making an
electronic recording of interviews.

As for how information obtained in an investigation will be used, DRI may publish a
public report consistent with the core functions and purposes of the protection and
advocacy program. 42 C.F.R. § 51.45 (b). We may also report the results of an

*Our Mission: To defend and promote the human and legal rights of Iowans with disabilities.*

400 East Court Avenue, Suite 300      Telephone: 515-278-2502       Toll Free: 1-800-779-2502       Website: w
Des Moines, Iowa 50309                FAX: 515-278-0539             Toll Free TTY: 1-866-483-3342     E-mail: in

PLAINTIFF'S
EXHIBIT
D   p.1

investigation to any responsible investigative or enforcement agencies pursuant to 42 C.F.R. § 51.45(b)(2).

We respect security concerns when investigating in a jail or prison and will work with your staff accordingly when doing the facility inspection. Our intent is to view the areas involved in the incident and any other area that was accessible to the inmates, including Marie Franks. We may also seek access to any program or inmates for the purpose of monitoring compliance with respect to rights and safety of inmates.

I hope this addresses some of your concerns outlined in your letter. Again, we will plan to be present at the jail by 11:00 a.m. tomorrow and would be happy to meet with you first to review any other issues. We would also be available to pick up copies of the records previously requested at that time.

If you have any questions, please feel free to contact me at cmiller@driowa.org or (515)278-2502 ext. 32.

Sincerely,

DISABILITY RIGHTS IOWA

Cynthia A. Miller
Senior Staff Attorney

| | |
|---|---|
| **From:** | Alan R. Ostergren <aostergren@co.muscatine.ia.us> |
| **Sent:** | Thursday, December 19, 2013 2:29 PM |
| **To:** | Cyndy Miller |
| **Subject:** | Marie Franks |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Ms. Miller:

I have received your fax. You have requested certain documents which are releasable under Iowa Code Chapter 22. I have previously indicated that we are not going to release our internal investigation documents as they are not records of Ms. Franks and they are otherwise confidential under Chapter 22. I have previously requested that you provide me case law that would indicate that these documents are releasable in connection with your protection and advocacy investigation. You have not yet provided me with a satisfactory response.

We will assemble our response to the remainder of your requests.

**Alan R. Ostergren**
Muscatine County Attorney
420 E. Third Street
Muscatine, Iowa 52761
Voice: (563) 263-0382
Fax: (563) 263-4944



PLAINTIFF'S EXHIBIT

E

THE OFFICE OF

# THE MUSCATINE COUNTY ATTORNEY

### Alan R. Ostergren
County Attorney

420 E. Third Street
Muscatine, Iowa 52761-4104
Phone: (563) 263-0382
Fax: (563) 263-4944
www.co.muscatine.ia.us
attorney@co.muscatine.ia.us



Assistant County Attorneys:
Korie L. Shippee
Kevin McKeever
Oubonh P. White

January 21, 2014

Ms. Cynthia Miller
Disability Rights Iowa
400 East Court Ave,, Ste. 200
Des Moines, Iowa 50309

Re:    Your letter of January 8, 2014

Dear Ms. Miller:

I have now had an opportunity to review your letter of January 8, 2014. As you know, 42 U.S.C. § 10805 provides Disability Rights Iowa with access to facilities such as the Muscatine County Jail. The statute also authorizes your organization to conduct an investigation. I find no statutory authority to demand interviews of our jail employees.

My research does not reveal any decision where a court has considered a challenge to the validity of 42 C.F.R. § 51.42. The regulation purports to grant authority to your organization which appears to be inconsistent with the statue. If you are aware of a contrary court decision please let me know at your earliest convenience.

I would like to receive more information from you as to the manner and circumstances under which you believe these interviews would be conducted. Obviously, I would expect to be present for the interviews. We would also insist on making an electronic record of the interviews so that there would be no dispute at a later date as to what was said. I also want more information from you as to what you believe are the permissible uses of the information which might be gathered in the interviews.

Your organization may have access to the jail on January 22 (or any other date if you wish). I am sure that you understand that there are security concerns presented by bringing outside personnel into the jail. I would like more information from you as to what you anticipate will occur during a jail visit.

PLAINTIFF'S
EXHIBIT
E p.1

Ms. Cynthia Miller
Page 2 of 2

I also must express my concern about several public comments made by
your director to the Des Moines Register to the effect that she believed
the use of the Taser against Marie Franks was unwarranted and wrong.
It appears from her conclusory statements that DRI has already
completed its investigation. I am very disappointed to see such one-sided
comments from her. The fact that she has already convicted us in her
public comments makes me question DRI's commitment to fairness in
this matter.

I look forward to receiving your response.

Very truly yours,

Alan R. Ostergren
Muscatine County Attorney

cc:    Sheriff Dave White

F. p 2

# Cyndy Miller

**From:** Cyndy Miller
**Sent:** Thursday, January 30, 2014 5:01 PM
**To:** 'Alan R. Ostergren'
**Subject:** RE: Tomorrow

As you are aware, we were at the Muscatine Co. Jail last Wednesday intending to review the jail facility in connection with the investigation into the taser incident. We were disappointed to find out you were not meeting with us as expected by your communication below as we hoped to have a more in-depth discussion of our legal authority and resolve any issues with our access to investigate. In addition, while we appreciated Lt. McCleary giving us a tour of the jail, he was not able to answer any direct questions about the incident under investigation and we do not consider the tour as access to the facility for purposes of our investigation.

We have not heard from you regarding several of our requests in this investigation. These include:

- No response or legal authority provided for the denial of an opportunity to interview staff involved in the incident;
- No response or legal authority provided for denial of internal investigation reports; and
- No receipt of documents related to our records request dated November 1 and December 19, 2013. You indicated in an email dated January 2, 2014 that you were working with the jail administrator to assemble a response to our December 19 request and would provide by the week of January 6, 2014. We have not received any documents or legal response since.

We have tried to communicate to you that you are welcome to call, email or correspond with us to discuss our access authority. However the lack of response and communication leads us to believe you are not going to cooperate or are not willing to discuss the matter further with us informally.

Therefore, this is to inform you that we intend to seek enforcement of our access authority by filing a complaint in federal district court. If you would like to work out these issues prior to our filing of a complaint, please contact me by February 6, 2014.

Cyndy Miller


Cynthia A. Miller
Senior Staff Attorney


400 East Court Avenue, Suite 300
Des Moines, IA 50309
cmiller@driowa.org

Tel: 515-278-2502   Toll Free: 1-800-779-2502
Fax: 515-278-0539 Toll Free TTY: 1-866-483-3342 www.disabilityrightsiowa.org

PLAINTIFF'S
EXHIBIT

This message contains confidential information. Unless you are the addressee you may not copy, use, or distribute this information. If you have received this message in error, please contact me and return it promptly.

-----Original Message-----
From: Alan R. Ostergren [mailto:aostergren@co.muscatine.ia.us]
Sent: Wednesday, January 22, 2014 6:38 AM
To: Cyndy Miller
Subject: Re: Tomorrow

I will expect to see you this morning. I will evaluate your fax when I get to the office. I only had a few minutes to look at it before I had to leave yesterday.

Just so there are no misunderstandings I am planning on only a jail tour to occur today. If I find the authority cited in your letter persuasive we will have to schedule interviews at a later date.

Snow and hazardous wind chills are forecast today. Please drive carefully.

Sent from my iPhone

On Jan 21, 2014, at 4:41 PM, "Cyndy Miller" <CMiller@driowa.org<mailto:CMiller@driowa.org>> wrote:

I just faxed a response to you with more detail. We still plan to come tomorrow and will hope the roads are clear. Our intent is to be there by 11 a.m. If for any reason we find road conditions bad and need to turn around, I will give you a call at the number listed below.

No offense was intended by calling the jail. I had Whitney call your office last week but we didn't have a response so we made an assumption to go ahead and contact the jail directly. We will work directly through you in the future. We look forward to meeting you tomorrow.

Cyndy Miller


Cynthia A. Miller
Senior Staff Attorney

 <image001.jpg>

400 East Court Avenue, Suite 300
Des Moines, IA 50309
cmiller@driowa.org<mailto:cmiller@driowa.org>

Tel: 515-278-2502   Toll Free: 1-800-779-2502
Fax: 515-278-0539  Toll Free TTY: 1-866-483-3342 www.disabilityrightsiowa.org<http://www.disabilityrightsiowa.org/>

This message contains confidential information. Unless you are the addressee you may not copy, use, or distribute this information. If you have received this message in error, please contact me and return it promptly.


From: Alan R. Ostergren [mailto:aostergren@co.muscatine.ia.us]
Sent: Tuesday, January 21, 2014 3:35 PM
To: Cyndy Miller
Subject: Tomorrow

6 p. 2

Please let me know if you intend on touring the jail tomorrow and your anticipated time of arrival. If you would like to reschedule that would be fine. The roads were quite icy and snow covered this morning. Hopefully everything should be clear by tomorrow.

Also, I want to make sure that you understand that I prefer to be the point of contact on these issues. I understand that you left a voicemail for the jail administrator this morning prior to getting the fax I sent you. I see from your letter that you were under the impression that I wanted you to contact him for the jail access, so I am certainly not offended by you calling him. In the future, however, please contact my office. Thank you for your attention to this.


Alan R. Ostergren
Muscatine County Attorney
420 E. Third Street
Muscatine, Iowa 52761
Voice: (563) 263-0382
Fax: (563) 263-4944